# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
(Filed: March 27, 2014)
**PUBLISHED**

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | |
| ROBERT DIMATTEO, | * | No. 10-566V |
| | * | |
| | * | Special Master |
| Petitioner, | * | Hamilton-Fieldman |
| | * | |
| v. | * | Interim Fees and Costs; Excessive Fees |
| | * | and Costs; Attorneys' Hourly Rates; |
| SECRETARY OF HEALTH | * | Expert Hourly Rates; Vague or |
| AND HUMAN SERVICES, | * | Excessive Time Entries. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | * | |

Patricia A. Finn, Patricia Finn Esq., Piermont, NY, for Petitioner.
Jennifer Reynaud, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM FEES AND COSTS[1]

On August 19, 2010, Robert Dimatteo ("Petitioner") filed a petition in the National Vaccine Injury Compensation Program (the "Program"),[2] alleging that the

[1] Because this published decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this order on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Otherwise, the entire order will be available to the public. *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act"), Pub. L. No. 99-660,

hepatitis A and varicella vaccines administered on August 12, 2009, caused him to develop transverse myelitis ("TM"). Petition ("Pet.") at 1. Over the next three years, Petitioner filed medical records and an expert report. This matter has not yet gone to hearing and no decision on entitlement has issued. Petitioner is now seeking an interim award of $50,631.00[3] in attorneys' fees for work performed up to and including October 23, 2013, and $27,977.50[4] in expert fees and costs for work performed and expenses incurred through October 29, 2013. *See* Pet'r's Reply at 4-5, ECF No. 60; Invoices; ECF Nos. 60-1, 60-2.

For the reasons set forth below, the undersigned awards Petitioner $25,442.60 in interim attorneys' fees, up to and including October 23, 2013, and $25,247.50 in interim costs, incurred up to and including October 29, 2013.

## I. PROCEDURAL BACKGROUND

Following the filing of their petition on August 19, 2010, Petitioner filed numerous medical records in support of their claim. *See* Filings, August 25, 2010, April 4, 2011, April 29, 2011, May 2, 2011, October 18, 2011, December 15, 2011, January 20, 2012, February 2, 2012, ECF Nos. 4, 14, 18, 19, 26, 29, 35, 36. Respondent filed a Rule 4(c) Report on March 19, 2012, requesting missing medical records, and arguing that Petitioner's claim be dismissed because they had not proffered a medical opinion or theory to establish that the administered vaccinations were causally related to Petitioner's TM. *See generally* Resp't's Report, ECF No. 37.

Petitioner filed additional medical records on April 18, 2012, and May 21, 2012, and filed a statement of completion on July 23, 2012. Filings, ECF Nos. 39, 41, 43. On June 11, 2013, Petitioner filed an expert report from Marcel Kinsbourne M.D., accompanied by his curriculum vitae ("CV") and supporting literature. Filings, ECF Nos. 48, 49. On July 1 and 22, 2013, Petitioner filed additional medical records regarding amplification of varicella virus DNA in Petitioner. Filings, ECF Nos. 50, 51.

---

100 Stat. 3755, codified as amended, 42 U.S.C.A. § 300aa-10-34 (2006). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. §300aa.

[3] Petitioner's original "Motion for Interim Attorney's Fees and Costs" indicated that they were seeking $50,000.00 in attorneys' fees and costs in the amount of $4,850.00. Petitioner's Reply lists total legal fees as $50,689.10; however, the total amount requested, as supported by the submitted invoices, ECF No. 60-1, is equal to $50,631.00.

[4] The requested $27,977.50 in fees is comprised of the $350.00 filing fee for the Program, the $10,450.00 invoice from Dr. Marcel Kinsbourne, the $625.00 invoice from Dr. Joseph Berger, and the $16,552.50 invoice from BalaCare LLC. ECF No. 60-2.

A status conference was held on September 19, 2013, and Respondent's counsel indicated that settlement appeared feasible in this case. Order, ECF No. 53. Accordingly, Petitioner was ordered to send a settlement demand to Respondent by October 24, 2013, and both parties were ordered to file a joint status report by December 2, 2013, updating the undersigned on the progress of settlement negotiations. Order, Sept.19, 2013, ECF No. 53. On October 31, 2013, Petitioner informed the undersigned that a settlement demand had been sent to Respondent. Status Report, ECF No. 57. Petitioner and Respondent filed a joint status report on December 2, 2013, indicating that they are both diligently working towards settlement. Status Report, ECF No. 62.

Amidst settlement negotiations, on October 1, 2013, Petitioner filed a motion for interim attorneys' fees and costs. Motion, ECF No. 54. Petitioner requested $50,000.00 in attorneys' fees and $4,850.00 for costs associated with retainers paid to experts. Motion at 4-5, ECF No. 54. Petitioner contends that his claim was brought in good faith upon a reasonable basis, and believe interim attorneys' fees and costs are justified because they have been pursuing this claim for over three years, Petitioner's counsel has eight pending cases in the Program, and Petitioner had to borrow money to pay the retainers needed for an expert opinion and a life care plan. Included with Petitioner's motion was a retainer letter, fee schedules and relevant CVs for BalaCare LLC, the company Petitioner used to obtain a life care plan. Motion, Ex. 1, ECF No. 54-1.

On November 1, 2013, Respondent filed a response objecting to Petitioner's motion for interim attorneys' fees and costs. Response, ECF No. 58. Respondent contends that the undersigned lacks the authority to grant attorneys' fees and costs until compensation is awarded or judgment is entered denying compensation. *Id.* at 5-6. If the undersigned were inclined to grant any interim attorneys' fees or costs, then Respondent argues that Petitioner had not met their burden of establishing that the attorneys' fees and costs are reasonable. *Id.* at 7. Respondent noted that Petitioner had not filed any invoices for costs, and had not filed any supporting documentation related to the hourly rate of Petitioner's counsel ($420.00 per hour). *Id.* at 7.

Petitioner filed a reply to Respondent's objections on November 19, 2013. Reply, ECF No. 60. Petitioner argued that under applicable Federal Circuit precedent, the Program has awarded interim attorneys' fees and costs to many other petitioners, and reasserted that an interim attorneys' fees and costs award is appropriate for this claim. Reply, Nov. 19, 2013, ECF No. 60. Petitioner submitted an invoice of billed hours and contended that the rate charged by Petitioner's counsel was reasonable for the New York City area. *Id.* at 4; *see also* Invoice, ECF No. 60-1. In addition, Petitioner filed invoices from Dr. Marcel Kinsbourne, BalaCare LLC, and Dr. Joseph Berger. Invoice, ECF No. 60-2. Petitioner now requests payment of the full invoice amounts, as opposed to only the retainer already paid. Reply at 5, ECF No. 60. Petitioner has also added the Court's original filing fee to their costs request.

On December 11, 2013, Respondent filed a response to Petitioner's reply ("Respondent's Second Response"). Resp't's Second Response, ECF No. 63. Respondent objected to the rate of $420.00 per hour charged by attorneys Patricia Finn and Jonathan Victor, arguing that they lacked the necessary experience and expertise to warrant such a high hourly rate. *Id.* at 7-10. Respondent also objected to the hourly rate billed for paralegal tasks, the vagueness of certain billing descriptions, and the rate billed for normally non-compensable administrative tasks. *Id.* at 10-11. Respondent did not object to the invoices submitted by BalaCare LLC or Dr. Joseph Berger, but contends that Dr. Kinsbourne's hours billed and hourly rate are unreasonable and not sufficiently substantiated. This matter is now ripe for adjudication.

## II. LEGAL STANDARD

The Vaccine Act permits an award of reasonable attorneys' fees and costs. 42 U.S.C. § 300aa–15(e). If petitioner is ultimately unsuccessful, he can still recover attorneys' fees and costs as long as their claim was brought in good faith and upon a reasonable basis. *Cloer v. Sec'y of Health & Human Servs.*, 133 S.Ct. 1886, 1893 (2013). The Federal Circuit has held that attorneys' fees and costs may be granted on an interim basis prior to a decision on entitlement. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010) ("A special master can often determine at an early stage of the proceedings whether a claim was brought in good faith and with a reasonable basis." (quoting *Avera*, 515 F.3d at 1352)).

In *Avera*, the Federal Circuit provided examples of circumstances where an interim fee award may be appropriate, such as when the case involved protracted legal proceedings, when costly experts had been retained, or when petitioners have suffered an undue hardship. *Avera*, 515 F.3d at 1351-52; *see also McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 301 (Fed. Cl. Nov. 4, 2011) ("some special showing is necessary to warrant interim fees, including but not limited to delineated [*Avera*] factors...."); Vaccine Rule 13(b). Since *Avera*, cases have clarified that an award of interim fees is in the special master's discretion and that there are various circumstances under which an interim award is appropriate. *See Crutchfield v. Sec'y of Health & Human Serv.*, No. 09–39V, 2011 WL 3806351, at *5–7 (Fed. Cl. Spec. Mstr. Aug. 4, 2011) (listing cases).

Fees and costs must both be reasonable. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. Oct. 30, 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."), *aff'd*, 33 F.3d 1375 (Fed. Cir.1994). The burden is on petitioners to provide an adequate description and sufficient documentation

demonstrating the reasonableness of requested fees and costs. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208–09 (Fed. Cl. Feb. 10, 2009).

In reviewing a fees and costs application, the special master need not engage in a line-by-line analysis of the application. *See Hocraffer v. Sec'y of Health & Human Servs.*, 99–533V, 2011 WL 6292218, at *13 ( Fed. Cl. Spec. Mstr. Nov. 22, 2011) (citing *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011)). Special masters are afforded wide discretion in determining the reasonableness of both attorneys' fees and incurred costs. *Morse v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 683, 687 (Fed. Cl. Nov. 10, 2009) Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993).

To determine reasonable attorneys' fees, the Federal Circuit has traditionally employed the lodestar method, a two-step process. First, a court makes an "initial estimate" which involves "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347–48 (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward adjustment to the initial fee estimate based on other specific findings. *Id.* at 1348.

To determine a reasonable hourly rate, the special master must examine the prevailing rate for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1347–48 (*citing Blum*, 465 U.S. at 888). Hourly rates will be based on the precise task performed, "not the title or education of the person performing it." *Doe/11 v. Sec'y of Health & Human Servs.*, 2010 WL 529425, at *9 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (*citing Missouri v. Jenkins*, 491 U.S. 274, 288, (1989)). For example, substantive review of medical records is appropriately performed by an attorney and should be billed as such. Copying and compiling such records, however, should be billed at the paralegal or administrative rate.

In Vaccine Act cases, the prevailing market rate is determined using the forum rule rather than the geographic rule. *Avera*, 515 F.3d at 1349. The applicable forum is Washington, D.C.; but, to prevent windfalls to attorneys from less expensive legal markets, the Federal Circuit applies the "Davis exception." *Id.* (*citing Davis Cnty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755 (D.C.Cir.1999)). The Davis exception is applied in cases where the majority of an attorney's work occurs outside the forum, and there is a "very significant difference" between the forum rate and the local rate. *Id.* at 1349-50.

Under the lodestar approach, a court must "exclude ... hours that were not 'reasonably expended,'" which would include hours that are "excessive, redundant, or

otherwise unnecessary." *Hensley v. Sec'y of Health & Human Servs.*, 461 U.S. 424, 433-34 (1933). In the past, compensation has been denied for certain secretarial or administrative tasks. *See Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *22 (Fed. Cl. Spec. Mstr. July 25, 2011) (listing examples from past cases).

## III. DISCUSSION

### a. Authority to Award Interim Attorneys' Fees and Costs

Respondent objects to any issuance of interim attorneys' fees and costs, contending that judgment must be entered before any award of attorneys' fees and costs can be authorized. The undersigned is aware that this is an issue regularly raised by Respondent. However, Respondent also frequently stipulates to such fees. Following the Federal Circuit precedent of *Shaw* and *Avera*, many special masters have awarded interim attorneys' fees and costs.

In *Shaw,* the Federal Circuit relied on the reasoning used in *Avera* since special masters can often determine good faith and reasonableness early in proceedings, interim fee awards are consistent with the underlying purpose of the Vaccine Act and allow petitioners access to a competent bar. *See, e.g.*, *Shaw*, 609 F.3d at 1374–75; *Avera*, 515 F.3d at 1352. The Supreme Court reiterated this type of reasoning in the recent *Cloer* decision. In *Cloer*, the Supreme Court held that attorneys' fees and costs may still be awarded even where the claim is untimely, as long as they are reasonable and brought in good faith, because to do otherwise would contradict the intentions of the Act's "fee scheme" by discouraging attorneys from representing petitioners with potentially untimely claims. *Cloer*, 133 S.Ct. at 1896. The Supreme Court further reasoned that "shadow trials" for reasonableness and good faith will not occur because while special masters are reviewing the record for timeliness, they will be able to determine if there is a reasonable basis for the claim, and if it was brought in good faith. *Id.* The undersigned concludes she has the authority to award interim attorneys' fees and costs.

### b. Justification for Award of Interim Attorneys' Fees and Costs

Respondent has not disputed the reasonableness and good faith of Petitioner's claim. Petitioner has filed medical records and an expert report to demonstrate that he developed TM from the hepatitis A and varicella vaccines. There is no evidence that Petitioner does not earnestly believe that his injury is vaccine related. Petitioner has filed an expert report by Dr. Kinsbourne, who has in the past given expert testimony in several other TM cases. Therefore, Petitioner has brought a claim in good faith and upon a reasonable basis.

Respondent has also not specifically objected to Petitioner's assertions that they deserve an interim award for attorneys' fees and costs due to the protracted nature of this dispute and the undue hardship the cost of litigation has placed on Petitioner and Petitioner's counsel. Although the parties appear to be working towards an informal settlement, it has been over three years and come at considerable cost to both Petitioner himself and Petitioner's counsel. Petitioner took out a loan to afford the cost of an expert witness retainer and a life planner retainer. Motion at 4, ECF No. 54. In addition, Petitioner's counsel appears to have a small practice with several pending claims in the Program, *Id.* at 3; Reply at 5, ECF No. 60, and she has had to work for three years without compensation. Petitioner has established that he may be awarded reasonable interim attorneys' fees and costs.

**c. Reasonableness of Requested Interim Attorneys' Fees**

Petitioner is represented by Patricia Finn of Piermont, New York. Petitioner has filed invoices dating from March 2010 through December 2013. Invoice, ECF 60-1. These invoices included fees billed for Ms. Finn, and apparently for Mr. Jonathan Victor, and Ms. Jessica Lucas Paradies (identified in the invoices as PF, JV and JL), along with an unidentified assistant indicated as YA in the July 31, 2011 invoice. *Id.*

Petitioner has filed attorney invoices for a total of $50,631.00 in related legal fees. For their senior attorneys Ms. Finn and Mr. Victor, Petitioner seeks a rate of $420.00 per hour. For Ms. Finn, Petitioner requests fees for 42 hours of work for a total of $17,640.00. For Mr. Victor, Petitioner seeks fees for 26.45 hours of work for a total of $11,109.00. For Ms. Lucas Paradies, Petitioner seeks fees for 109.36 hours of work at a rate of $200.00 per hour, for a total of $21,872.00. For the unidentified assistant labeled YA, Petitioner seeks fees for 0.1 hours of work at a rate of $100.00 per hour, for a total of $10.00. Invoice, ECF No. 60-1.

**i. Hourly Rates for Ms. Finn and Mr. Victor**

Respondent objects to the $420.00 per hour requested by Ms. Finn and Mr. Victor. The reasonable hourly rate for each attorney must be in accord with "the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896). If a significant portion of an attorney's work is done outside of the Vaccine Program forum—the District of Columbia—and the forum hourly rate is significantly higher than the local hourly rate where an attorney's work was performed, then the *Davis* exception applies and the award will be based on the lower local hourly rate. *Id.* at 1349. The *Davis* exception does not apply when the forum rates are lower than an attorney's local rate. *Id.*; *see Rodriguez v. Sec'y of Health & Human Servs.*, 2009 WL 2568468, at *16 (Fed. Cl. Spec. Mstr. July 27, 2009)(discussing why *Avera* does not mention a higher-cost exception, and how other federal courts have only applied such a higher rate than the

forum rate when "out of town counsel possessed special expertise or [] local counsel were unwilling to take such cases").

Petitioner's counsel both practice in the New York City Tri-State area, with significantly higher overhead than other areas, and request a reasonable rate that appropriately reflects the higher costs of the area. Reply at 4-5, ECF No. 60. Comparing New York City rates to forum rates, another special master has found that forum rates must apply. *Rodriguez v. Sec'y of Health & Human Servs.*, 2009 WL 2568468 at *16 (Fed. Cl. Spec. Mstr. July 27, 2009). The undersigned concludes that forum rate determination is appropriate in this case, as well; therefore there is no need to determine local rates. Petitioner's counsel will be awarded reasonable forum rates based on experience, skill and reputation.

Aside from the rates requested, and mention of a similar rate awarded to another New York City attorney, Petitioner's counsel has presented no evidence of the appropriate forum rate. Motion, ECF No. 54; Reply at 4-5, ECF No. 60. Ms. Finn and Mr. Victor have never before been awarded a specific hourly rate in the Vaccine Program, although Ms. Finn has received stipulated attorneys' fees in the past. Ms. Finn has been in practice since 2003.[5] Ms. Finn attests that she has ten pending Vaccine Act cases, and since 2004 she worked on as many as 25 cases in the Program. Reply at 5, ECF No. 60; Motion at 3, ECF No. 54. Mr. Victor first began practicing in 2008, and he is currently operating a separate law firm with more diverse interests.

Respondent has pointed to numerous recent cases where other special masters have determined the forum rates for attorneys. For example, an attorney with 40 years of legal experience, and ten years of Program experience, was awarded $340.00 per hour for the years 2010 and 2011. *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2013 WL 1189451 (Fed. Cl. Spec. Mstr. Mar. 1, 2013); *Garcia v. v. Sec'y of Health & Human Servs.*, No. 07-286V, 2011 WL 6941702 (Fed. Cl. Spec. Mstr. Dec. 13, 2011). In a case from 2009, a special master found that "a reasonable range for attorneys with ten or more years of experience providing services in the Vaccine Program in Washington, D.C. [was] $250.00 to $375.00 per hour." *Masias v. Sec'y of Health & Human Servs.*, 2009 WL 1838979, at *25 (Fed. Cl. Spec. Mstr. June 23, 2009). In 2011, a special master found that the forum rate for an attorney with 13 years of experience and no previous Vaccine Program experience was $256.00 per hour to $293.00 per hour for the years 2005 to 2009. *Carcamo v. Sec'y of Health & Human Servs.*, No. 07-483V, 2011 WL 2413345 (Fed. Cl. Spec. Mstr. May 20, 2011).

Petitioner presented little to no evidence regarding his experience or what forum rates should apply. However, based on the sparse record at hand and past decisions of

[5] (http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5636509).

other special masters, the undersigned finds that, for the years 2010 through 2013, Ms. Finn should be compensated at $300.00 per hour and Mr. Victor should be compensated at $220.00 per hour.

**ii. Hourly Rate of Jessica Lucas Paradies and YA**

Petitioner seeks a rate of $200.00 per hour for work performed by Jessica Lucas Paradies. Respondent believes that the reasonable rate for paralegal tasks performed by Ms. Lucas Paradies is $110 per hour. Resp't's Response at 10, ECF No. 63. Respondent believes that Ms. Lucas Paradies has the title of Office Manager or Vaccine Manager. Petitioner's counsel has not presented any information on the background or title of Ms. Lucas Paradies.

After review of the invoice, it is apparent that Ms. Lucas Paradies performed research and drafting consistent with standard paralegal duties. Other special masters in the Program have determined that paralegal rates of up to $125 per hour are reasonable forum rates. *See Yang v. Sec'y of Health & Human Servs.*, No. 10-33V, 2013 WL 4875120, at *4 (Fed. Cl. Spec. Mstr. Aug. 22, 2013); *Brown v. Sec'y of Health & Human Servs.*, No. 09–426V, 2012 WL 952268, at *3 (Fed. Cl. Spec. Mstr. Feb. 29, 2012); *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 723 (Fed. Cl. Oct. 31, 2011). Therefore, the undersigned finds that Ms. Lucas Paradies should be compensated at the $110.00 per hour rate proposed by Respondent.

Petitioner seeks a rate of $100.00 per hour for a person identified as YA for the specific task of receiving and reviewing a court order. Invoice at 6, ECF No. 60-1. Respondent has not challenged this rate. Therefore, the undersigned finds that YA shall be compensated at $100.00 per hour.

**iii. Vague Entries and Administrative Tasks**

Respondent objects to vague entries listed in Petitioner's invoice, arguing that some of the billing descriptions for Mr. Victor are so vague that the undersigned cannot determine if the time billed is reasonable. Respondent objects to the following time entries by Mr. Victor: .2 hours for "Received Verification," Invoice at 3, ECF 60-1; .2 hours for "Medical records needed," *Id.*; .3 hours for "Followed up on medical records," *Id.* at 4; and 2 hours for "Requesting additional records…," *Id.* at 9. It is unclear from these billing entries whether the tasks performed were administrative, the task should have been performed by a paralegal, or were reasonably performed by Mr. Victor. Therefore, the undersigned declines to compensate these hours.

Respondent also objects to apparent administrative tasks performed by Ms. Lucas Paradies. Ms. Lucas Paradies billed 40.2 hours for scanning and preparing medical records. This type of task should be characterized as administrative or secretarial work,

which other special masters have determined as non-compensable. *See Hocraffer*, 2011 WL 3705153, at *22 (listing examples from past cases). *See Riggins v. Sec'y of Health & Human Servs.*, No. 99–382V, 2009 WL 3319818, at *20 (Fed. Cl. Spec. Mstr. Jun. 15, 2009) (meetings regarding scanning and computer issues, consultation with Legal Nurses Association to discuss reviewing cases and preparing chronologies are not compensable); *see also Cowan v. Sec'y of Health & Human Servs.*, No. 90–1189V, 1993 WL 410090 (Fed. Cl. Spec. Mstr. Sep. 30, 1998) (faxing, delivering and mailing information, conferring with staff, planning travel arrangements was administrative, secretarial and not compensable); *see also Vickery v. Sec'y of Health & Human Servs.*, No. 90–997V, 1992 WL 281073 (Fed. Cl. Spec. Mstr. Sep. 24, 1992) (telephonically leaving a message, filing records in a drawer are secretarial tasks and not compensable); *see Lamar v. Sec'y of Health & Human Servs.*, No. 99–583V, 2008 WL 3845165, at *14 (Fed. Cl. Spec. Mstr. Jul. 30, 2008) (reducing the number of hours spent by an attorney on tasks that do not "require an attorney's time or attention"). The undersigned declines to compensate for these administrative tasks.

#### iv. Final Attorneys' Fee Calculations

In accordance with the above analysis, Ms. Finn billed 42 hours at a rate of $300.00 per hour for a total fee of $12,600.00. Mr. Victor billed 23.75 hours at $220.00 per hour for a total of $5,225.00. Ms. Lucas Paradies billed 69.16 hours at a rate of $110.00 per hour for a total of $7607.60. The person identified as YA billed .1 hours at $100.00 per hour for a total fee of $10.00. In sum, Petitioner is awarded $25,442.60 in interim attorneys' fees.

### d. Reasonableness of Requested and Costs

Petitioner has requested $27,977.50 in interim costs. This amount is comprised of the $350.00 filing fee for the Program, the $10,450.00 invoice due to Dr. Marcel Kinsbourne, the $625.00 invoice due to Dr. Joseph Berger, and the $16,552.50 invoice due to BalaCare LLC. The burden is on Petitioner to provide an adequate description and sufficient documentation demonstrating the reasonableness of requested costs. *See Sabella*, 86 Fed. Cl. at 209; *Duncan v. Sec'y of Health & Human Servs.*, No. 99-455V, 2008 WL 4743493, at *1 (Fed. Cl. Aug. 4, 2008).

#### i. Life Care Plan and Other Costs

Respondent has not objected to Petitioner's costs for a life care planning assessment. Petitioner hired Balacare LLC to provide a life care plan assessment. Petitioner has submitted an invoice from Balacare LLC that included comprehensive CVs for all of the Balacare LLC employees involved in the assessment. Balacare LLC charged Petitioner for 72.25 hours at $230.00 per hour, plus an additional $165.00 in travel costs, for a total of $16,552.50. *See* Invoice, ECF 60-2**.** The cost for the life

planning assessment is reasonable; therefore, Petitioner is awarded $16,552.50 for the costs charged by Balacare LLC.

Respondent has also not objected to Petitioner's request for the cost of the Program filing fee ($350.00) or the cost for a Kentucky record review by Dr. Berger (1.25 hours at $500.00 per hour for a total of $625.00). Therefore Petitioner shall be awarded $350.00 for the cost of the Program filing fee, as well as $625.00 for the cost of Dr. Berger's services.

**ii. Petitioner's Expert, Dr. Kinsbourne**

Respondent objects to both the hours expended by Dr. Kinsbourne and his requested hourly rate of $500.00. Petitioner has submitted a one-page invoice from Dr. Kinsbourne showing that he spent 20.9 hours, at a rate of $500.00 per hour, for a total of $10,450.00. Petitioner has not submitted any other evidence or argument to show that the hours expended and hourly rate are reasonable. Dr. Kinsbourne frequently testifies and submits expert opinions in the Program. In the past, he has been awarded an hourly rate of $500.00, but some special masters have reduced his requested hourly rate to $300.00. *See Hammitt v. Sec'y of Health & Human Servs.*, 2011 WL 1827221, at *7 (Fed. Cl. Spec. Mstr. Apr. 7, 2011); *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, *8 (Fed. Cl. Spec. Mstr. Feb. 21, 2008). Respondent believes that a rate of $300.00 per hour would be reasonable in this case. Response at 12, ECF No. 63.

Respondent believes that Dr. Kinsbourne's hourly rate should be reduced following the 2011 *Hammitt* decision. *Id.* at 12. According to Respondent, Dr. Kinsbourne's rate was reduced because his status as a non-practicing neurologist raises "significant concerns" as to his reliability. However, in *Hammit*, Dr. Kinsbourne's lack of a clinical neurology practice was only one of the critiques that caused the special master to reduce his hourly rate to $300 per hour. *Hammitt*, 2011 WL 1827221, at *7. The special master was also concerned about the quality of Dr. Kinsbourne's performance at hearing, particularly his parroting of the literature and his highly generalized testimony. *Id.* Most importantly, *Hammitt* was concerned with genetics issues, but Dr. Kinsbourne is a neurologist with limited knowledge of genetics. *Id.*

Dr. Kinsbourne previously has been awarded an hourly rate of $500.00; however, the undersigned notes that Dr. Kinsbourne's award of $500.00 in previous cases was notably unusual. *See, e.g.*, *Simon*, 2008 WL 623833, at *6; *Adams v. Sec'y of Health & Human Servs.*, No. 01-267V, 2008 WL 2221852, at *2 (Fed. Cl. Spec. Mstr. Apr. 30, 2008). In many other cases, he was awarded less. *See, e.g., Stone v. Sec'y of Health & Human Servs.*, No. 90-1041, 2010 WL 3790297, at *6 (Fed. Cl. Spec. Mstr. Sept. 9, 2010) (Dr. Kinsbourne awarded $300.00 per hour); *Hammitt*, 2011 WL 1827221, at *7 (Dr. Kinsbourne awarded $300.00 per hour).

To further substantiate this notion, in *Simon v. Secretary of Health and Human Services*, Dr. Kinsbourne was awarded $500.00 per hour for his expert services, but only $300.00 per hour for time expended for non-expert services. *Simon*, 2008 WL 623833, at *8. The special master in *Simon* found that $500.00 per hour is "deserved only for those hours spent as an expert," not for medical research or consulting with the attorney. *Id.* Dr. Kinsbourne deserved this expert rate based on his past experience in the Program and the "knowledge and efficiency" he brought to reviewing the medical record and preparing that particular case. *Id.* at *7. However, the special master determined that Dr. Kinsbourne should be awarded only $300.00 per hour when he was actually working in a consultant capacity—performing tasks such as "consulting on strategy, selection of experts, or trial tactics." *Id.* at *8.

Here, Dr. Kinsbourne has submitted an expert report on TM, an area of the Program in which he has significant experience. *See Hargrove v. Sec'y of Health & Human Servs.*, No. 05-0694V, 2009 WL 1220986, at *7-18 (Fed. Cl. Spec. Mstr. Apr. 14, 2009). This case has not yet gone to hearing, and the hours billed by Dr. Kinsbourne reflect time spent reviewing the record, preparing his expert report, retrieving medical literature, conferencing, and emailing. Specifically, Dr. Kinsbourne billed 6.1 hours of his 20.9 hour total on "Email." In the past, Dr. Kinsbourne has charged the lesser rate of $300.00 per hour for emails and phone calls. *See Stone*, 2010 WL 3790297, at *6. The undersigned has determined that "Email" is not expert work and will therefore be awarded at the lesser rate of $300.00 per hour.

Aside from the quarter of his time spent on correspondence, the undersigned is not satisfied that Dr. Kinsbourne performed with the requisite knowledge and efficiency to deserve an hourly rate of $500.00. Dr. Kinsbourne is highly experienced in TM, and it appears that he billed some time for review of the medical literature. Moreover, Dr. Kinsbourne billed over 20 hours for a matter for which he has not yet testified. In contrast, in *Simon*, the special master found it reasonable that Dr. Kinsbourne billed 24 hours including time spent testifying at trial. Therefore, for time billed other than for emails, Dr. Kinsbourne is awarded a rate of $400.00 per hour.

In sum, Petitioner is awarded $7,750.00 for costs associated with Dr. Kinsbourne—6.1 hours of email at $300.00 per hour ($1,830.00), plus 14.8 hours of other services performed at $400.00 per hour ($5,920.00).

### iii. Final Costs Calculations

Petitioner shall receive $16,522.50 for the cost of a life care assessment, $625.00 for the cost of Dr. Berger's record review in Kentucky, $350.00 for the cost of the filing fee, and $7,750.00 for the cost of Dr. Kinsbourne's expert report. In total, Petitioner is awarded $25,247.50 in costs.

## IV. CONCLUSION

The special master determines that there is no just reason to delay the entry of judgment on interim attorneys' fees and costs. Therefore, in the absence of a motion for review filed under RCFC Appendix B, the clerk of **court SHALL ENTER JUDGMENT in Petitioner's favor for $25,442.60 in interim attorneys' fees generated up to and including October 23, 2011, and $25,247.50 in interim costs, generated through October 29, 2013. Checks should be made payable jointly to Petitioner and Petitioner's counsel, Patricia Finn, Esq.** Under Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing the right to seek review.

**IT IS SO ORDERED.**

s/Lisa D. Hamilton-Fieldman
Lisa D. Hamilton-Fieldman
Special Master